FILED
Nov 26, 2018
02:22 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **MELISSA BRUMLEY,** | ) | **Docket No. 2017-05-0101** |
| | ) | **Docket No. 2017-05-0102** |
| **Employee,** | ) | |
| **v.** | ) | |
| **UNITED PARCEL SERV., INC.** | ) | **State File No. 100236-2015** |
| | ) | **State File No. 7876-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **LIBERTY MUTUAL** | ) | **Judge Robert Durham** |
| **Insurance Carrier.** | ) | |

---

## COMPENSATION HEARING ORDER

---

This matter came before the Court on November 9, 2018, for a compensation hearing on Ms. Brumley's claim for benefits for two alleged injuries: December 15, 2015 and January 9, 2017.[1]

As to the December 15, 2015 injury, the issues are the nature of her injuries, whether she is entitled to additional temporary disability benefits, and the extent of her permanent disability.

For the asserted January 9, 2017 claim, the issues were whether Ms. Brumley sustained a compensable injury to her low back, and if so, to what benefits she is entitled. Ms. Brumley also raised the issue of a possible psychiatric injury.

For the following reasons, the Court finds Ms. Brumley is entitled to permanent disability and medical benefits for the December 15 injury and temporary disability and medical benefits for the January 9 injury.

---

[1] The Court consolidated the claims for the purpose of judicial economy.

## Procedural Issues

Ms. Brumley filed a "motion to cancel trial," which the Court heard as a motion to continue the compensation hearing, on the grounds that Ms. Brumley may suffer from a psychological injury and that UPS did not negotiate in good faith at the post-discovery mediation. The Court held the evidence regarding these assertions was insufficient to continue a hearing that was already delayed on several occasions.

UPS filed a motion in limine to exclude certain records attached to Dr. Richard Fishbein's deposition from evidence as well as to exclude his impairment ratings on the grounds that they did not comply with the AMA Guides for the Evaluation of Permanent Impairment, 6th ed. The Court held the exhibits were admissible with the exception of a C-32 report signed by Dr. Fishbein but which was not filed or provided to UPS's counsel before his deposition. The Court further held that UPS's arguments against Dr. Fishbein's impairment ratings went more to their weight than to their exclusion, and denied its motion.

Through the pre-compensation hearing statements and the parties' assertions, they agreed to limit the issues to those stated above. They also stipulated to the following:
- The expedited hearing transcript be considered evidence by the Court in place of live testimony.
- The compensation rate is $570.40 in both claims.
- Ms. Brumley remains employed with UPS at her pre-injury wages.
- She is not entitled to permanent disability benefits beyond one times her impairment rating.
- The dates Ms. Brumley seeks temporary disability benefits are July 29 to October 27, 2016, for the December 15, 2015 injury, and January 11 to January 19, 2017, and February 10 until April 18, 2017, for the January 9, 2017 claim.

## History of Claim

Ms. Brumley worked as a "p.m. sorter/cover driver" for UPS when she injured her mid back on December 15, 2015, while unloading packages. UPS accepted her injury as compensable, and following conservative treatment with Dr. Bradley Rudge at Caremark, Ms. Brumley chose Dr. Donald Klekamp from a panel to provide orthopedic care. On her first visit on February 19, 2015, Ms. Brumley complained of right mid-back pain, which Dr. Klekamp diagnosed as resolving thoracalgia. A month later, Ms. Brumley returned, complaining of mid-back and neck pain. Dr. Klekamp ordered thoracic and cervical MRIs, which were essentially negative.

With conservative treatment, Ms. Brumley's symptoms improved to the point that Dr. Klekamp released her to full duty. However, after working one day, she returned complaining of increased mid-back pain. Dr. Klekamp took her off work and ordered a

functional capacity evaluation (FCE). On July 29, Ms. Brumley returned to Dr. Klekamp complaining of increased upper mid-thoracic pain extending to her left shoulder after falling asleep on her shoulder. Dr. Klekamp placed her at maximum medical improvement, gave her permanent lifting restrictions based on the FCE, and assigned 2% impairment for thoracic strain. He did not assign any neck or shoulder impairment. UPS did not return Ms. Brumley to work given her restrictions.

On October 27, 2016, Ms. Brumley returned to Dr. Klekamp stating that her back had significantly improved with near resolution of her symptoms. She requested that Dr. Klekamp release her from her restrictions, and he did so. Ms. Brumley then returned to work for UPS in her former position. She testified that during November and December she had no problems with her back and driving was actually "therapeutic."

Ms. Brumley continued working at regular duty until January 9, 2017. She testified that she began experiencing "excruciating" back pain that afternoon. She said she called Karen Goodman, Safety Supervisor for UPS, and requested medical treatment for severe low-back pain, which was different from her previous injury. She stated Ms. Goodman advised her to seek care through her previous injury since filing a new claim could cause problems.

Ms. Goodman's account is somewhat different. She testified that Ms. Brumley cautioned her not to "freak out" since she was not claiming a new injury. She just needed to see a doctor because of increased back pain. Ms. Goodman stated she told Ms. Brumley that, if she were claiming a new injury, she must begin with an initial panel, but if her symptoms were due to the December 2015 injury, she could schedule a follow-up appointment with Dr. Klekamp. Ms. Brumley scheduled the appointment and then finished her route. Her supervisor, Doug Grissom, testified that he spoke with her several times that day and she never mentioned an injury or having any back pain.

The next morning, Ms. Brumley told Mr. Grissom that she needed to see a doctor for her back. She testified she told him it was a new injury to her low back, but Mr. Grissom denied that she mentioned a new injury. He referred her to Ms. Goodman, who advised her to see Dr. Rudge, with whom she first treated for her December 2015 injury.

Ms. Brumley testified that when she saw Dr. Rudge, she told him that her pain was in her low back, not between her shoulder blades as before, but he would only treat her under the 2015 claim. She admitted nothing in his records mentioned low-back pain. Following an exam, Dr. Rudge placed her on lifting restrictions. Mr. Grissom testified that on January 10, Ms. Brumley called him quite upset that these restrictions kept her from working; however, she still did not report a new injury.

Ms. Brumley kept her appointment with Dr. Klekamp. According to the intake sheet, she began having pain in her mid and lower back after a work-related injury on

3

January 9. Dr. Klekamp noted that Ms. Brumley said she had been "doing great" before then. He diagnosed her with recurrent, chronic thoracalgia, cervicalgia, and lumbago. At her request, he ordered MRIs of her thoracic and lumbar spine. He also allowed her to return to full duty.

UPS did not authorize the lumbar MRI but allowed additional cervical and thoracic MRIs, which showed a T5-6 disc bulge and a normal cervical spine. Dr. Klekamp reviewed them and found no change from the 2016 MRIs. He examined Ms. Brumley on January 31 and noted her pain had improved. She returned ten days later, and Dr. Klekamp recorded that at her January 31 visit, she stated she had "near complete resolution" of her back complaints, but now the pain was worse. She also wanted to make it clear that the back pain started on 02/09/2017,[2] and that it was a "new injury." On exam, Dr. Klekamp did not observe any objective signs of spinal problems. Regardless, he again ordered a lumbar MRI and also recommended she be off work for two months or until evaluated by a physiatrist. UPS submitted a First Report of Injury for the alleged January 9 injury, but the carrier denied the claim and declined to provide a lumbar MRI or pain management.

Nevertheless, Ms. Brumley remained off work until April 18 when she returned to Dr. Klekamp. He noted she claimed complete resolution of her neck and mid-back pain with ongoing low-back pain. He diagnosed myofascial low-back pain and resolved thoracic pain and returned her to regular duty. Ms. Brumley returned to work at her pre-injury wages the next day, although not as a driver.

After an expedited hearing, the Court ordered UPS to provide additional medical care for Ms. Brumley's alleged low-back injury. Following a lumbar MRI, Ms. Brumley again saw Dr. Klekamp who felt the MRI revealed a small central disk protrusion at L5-S1 without significant nerve compression. Dr. Klekamp noted "near complete resolution of her back pain" which led to his assessment of "low back pain resolving" and a minor L5-S1 disc bulge. He recommended conservative treatment and pain management. Finally, Dr. Klekamp saw Ms. Brumley several months later on January 26, 2018 for mid-back pain stemming from a coughing episode, which he did not find to be work-related. He noted that she did not complain of neck pain, left shoulder pain, or lumbar pain at this visit.

During cross-examination at his deposition, Dr. Klekamp agreed that Ms. Brumley's thoracic complaints were sporadic and based on activity. He maintained the 2% impairment for her work-related thoracic sprain was correct. He also agreed that Ms. Brumley showed no signs of malingering. He testified that when he took her off work from February 10 until April 18, 2017, it was due to a work-related injury to her low back. On redirect, he restated his opinion that Ms. Klekamp sustained a new work-

_____

[2] The Court assumes this is a typo and Dr. Klekamp intended to say 01/09/2017.

4

related injury to her low back in January 2017.

At the hearing, Ms. Brumley offered the deposition of orthopedist Richard Fishbein, M.D., who performed an independent medical evaluation. Dr. Fishbein stated that Ms. Brumley sustained work-related injuries that resulted in 2% impairment to the thoracic spine, 2% to the cervical spine, 1% to the left shoulder and 1% to the lumbar spine. However, other than a blanket statement that he used the AMA Guides in preparing his impairment ratings, he provides no foundation for them. Further, the opinion differed materially from his earlier written statement where he assigned a 5% rating to the cervical spine, with no justification for the change. Dr. Fishbein's deposition is marked by confusion, memory lapses and difficulty in following the question asked of him. To go into detail describing each instance is unnecessary, but they are obvious from reading his testimony.

### Findings of Fact and Conclusions of Law

Ms. Brumley must prove all elements of her case by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6). For the following reasons, the Court holds she proved entitlement to benefits for both dates of injury.

First, the Court must address Dr. Fishbein's testimony. Given the inconsistencies, confusion, and obvious errors present throughout his deposition, the Court gives little weight to his opinions. Thus, the Court will disregard Dr. Fishbein's testimony except to the extent that it corroborates Dr. Klekamp's opinions.

As to the substantive issues, the Court holds Ms. Brumley proved by a preponderance of the evidence that she sustained a permanent injury to her thoracic spine that arose primarily out of and in the course and scope of her employment with UPS on December 15, 2015. Tenn. Code Ann. 50-6-102(14). Thus, she is entitled to 2% impairment for the thoracic injury as well as lifetime medical benefits for its reasonable and necessary treatment.

However, the same cannot be said for Ms. Brumley's asserted injuries to her cervical spine and left shoulder. While Dr. Klekamp occasionally included neck pain in his diagnosis and Ms. Brumley claimed her mid-back pain radiated to her neck and left shoulder, Dr. Brumley never noted any objective findings. Further, her cervical MRI did not reveal any abnormalities. He never gave an opinion that she sustained a permanent work-related injury to her cervical spine or left shoulder. He did not include either the cervical spine or the left shoulder when assessing Ms. Brumley's permanent impairment. Causation must be proven to a "reasonable degree of medical certainty" to create a compensable injury. Tenn. Code Ann. 50-6-102(14)(C). Likewise, permanency must also be proven by expert medical testimony. *See Hill v. Royal Ins. Co*, 937 S.W.2d 873 (Tenn. 1996). The only medical evidence offered by Ms. Brumley to establish work-

5

related injuries to her cervical spine and left shoulder was Dr. Fishbein's testimony, and the Court will not give his opinions any weight on this issue. Therefore, Ms. Brumley failed to prove by a preponderance of the evidence that she sustained permanent, compensable injuries to her cervical spine and left shoulder.

With regard to temporary disability benefits from July 29, 2016, through October 30, 2016, Ms. Brumley's primary argument is that "she got better" during this interim, so that Dr. Klekamp lifted the "permanent" restrictions he placed on her activities in July. Since her symptoms improved, she obviously was not at MMI on July 27. Temporary disability benefits for a compensable injury are owed until the injured worker reaches maximum medical improvement (MMI) or is able to return to work at a pre-injury wage. Tenn. Code Ann. 50-6-207(1)(2). Here, Dr. Klekamp's final medical report identified July 27 as the MMI date. He did not revise this opinion. Given that the only credible medical evidence establishes July 27, 2016 as Ms. Brumley's MMI date for her 2015 injury, she failed to prove by a preponderance of the evidence that she is entitled to additional temporary total disability benefits for the 2015 injury.

The Court now turns to Ms. Brumley's alleged 2017 injury. The Court finds that Ms. Brumley experienced significant pain and discomfort in her mid to low back during and immediately following her shift on January 9, 2017. Dr. Klekamp's January 17 record clearly referred to low back pain; he diagnosed her with lumbago and ordered a lumbar MRI, which UPS refused to provide. Further, no one disputed that Ms. Brumley explicitly informed Dr. Klekamp and Ms. Goodman on February 9 that she was claiming a new January 9 work-related injury. Therefore, Ms. Brumley provided sufficient notice to UPS of an alleged new low back injury within the time required by Tennessee Code Annotated section 50-6-201.

However, Ms. Brumley must still prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Thus, lay testimony must generally be corroborated by expert medical testimony in order to meet the burden of proof regarding causation. *See Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *12 (Aug. 18, 2015).

In his deposition, Dr. Klekamp clarified that he believed Ms. Brumley sustained a new injury on January 9 because she experienced symptoms that involved the low back as opposed to the mid back, which was why he ordered a lumbar MRI. Further, he stated that when he took Ms. Brumley off work for two months in January 2017, it was for a "workers' comp injury." Dr. Fishbein also gave his opinion to a reasonable degree of medical certainty that Ms. Brumley sustained a low-back injury in January 2017 that was

6

primarily related to her employment, which corroborates Dr. Klekamp's opinion. Therefore, Ms. Brumley proved by a preponderance of the evidence that she sustained a compensable injury to her low back as a result of her employment on January 9, 2017.

In addition, the Court holds that Dr. Klekamp's testimony proves by a preponderance of the evidence that Ms. Brumley was entitled to temporary total disability benefits from February 10, 2017 until April 18, 2017. As for the period of January 10 through January 19, Ms. Brumley did not provide sufficient medical evidence that her disability was due to a compensable work injury. Thus, her request for temporary total disability benefits for that timeframe is denied.

As to her claim for permanent partial disability benefits for the January 2017 injury, Ms. Brumley failed to meet her burden of proof. Dr. Klekamp did not provide an impairment rating, either in his records or at his deposition. While Dr. Fishbein testified as to impairment, the testimony is uncorroborated by Dr. Klekamp, and the Court will not give it weight for the reasons stated above. Ms. Brumley is not entitled to permanent partial disability benefits for her lumbar injury; however, she is entitled to reasonable and necessary medical care.

Finally, Ms. Brumley did not produce any evidence of a psychological injury stemming from her work related injuries. Thus, her request for benefits for any psychological injury is denied.

IT IS, THEREFORE, ORDERED that:

1. UPS shall continue to provide medical treatment made reasonably necessary by Ms. Brumley's December 15, 2015 thoracic spine injury and January 9, 2017 lumbar spine work injuries with Dr. Klekamp as her treating physician.

2. Ms. Brumley's vocational impairment rating for her December 15, 2015 injury is 2% to the body as a whole, which equates to $5,133.60 at the stipulated compensation rate of $570.40. UPS shall pay to Ms. Brumley $5,133.60 in a lump sum from which her counsel is awarded 20%, or $1,026.72, as attorney's fees.

3. Ms. Brumley is entitled to temporary total disability benefits for her January 9, 2017 injury from February 10, 2017 until April 18, 2017, which equates to $5,541.03. UPS shall pay to Ms. Brumley $5,541.02 in a lump sum from which her counsel is awarded 20%, or $1,108.20, as attorney's fees.

4. Ms. Brumley's claims for additional medical benefits, temporary total disability benefits or permanent disability benefits related to the December 15, 2015 work injury and the January 9, 2017 work injury are denied. Her request for psychological benefits is also denied.

7

5. UPS shall pay court costs of $150.00 to the Court Clerk within five business days of this order becoming final. UPS shall also reimburse Ms. Brumley for reasonable litigation expenses, including but not limited to, court reporter fees and deposition expenses, with the exception of Dr. Fishbein's deposition fee.

6. UPS shall prepare and file with the Court Clerk a Statistical Data Form within ten business days of the date this order becomes final.

7. Absent an appeal, this order shall become final in thirty days.

**ENTERED NOVEMBER 26, 2018.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Transcript from Expedited Hearing
2. Expedited Hearing Order
3. Dr. Klekamp's deposition
4. UPS's designated medical records
5. Dr. Fishbein's depositions with attached exhibits (Ex. 4 for I.D. only)
6. Ms. Brumley's designated medical records
7. Letter from Ms. Brumley's counsel to UPS's counsel

Technical Record:

1. UPS's Motion in Limine
2. UPS's Pre-Compensation Hearing Statements
3. Ms. Brumley's pre-trial position statement
4. Dispute Certification Notice
5. Petition for Benefit Determination

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on November 26, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| David Hooper | | | X | dhooper@hooperzinn.com |
| Constance Mann | | | X | cmannlaw@msn.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9



Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# COMPENSATION HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**List of Parties**

**Appellant (Requesting Party):**_____ At Hearing:☐Employer☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone: _____Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____ , certify that I have forwarded a true and exact copy of this
Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all
parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee
Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___.

[Signature of appellant or attorney for appellant]    _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals
Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by
the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____ , having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support  $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____ .

_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                        RDA 11082